## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| ELLIOTT CHEVELLE GALES, | CASE NO. 5:23-CV-01321-JRA |
| Petitioner, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN JERRY SPATNY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Representing himself, Petitioner Elliott Gales, a prisoner in state custody, applied for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter has been referred to me to prepare a Report and Recommendation. (Non-document entry of July 17, 2023). On November 21, 2024, I allowed Mr. Gales to amend his petition to include one additional ground for relief. (ECF #23). On December 27, 2024, Respondent Warden Jerry Spatny, as Warden of the Grafton Correctional Institution (hereinafter, the State), filed the answer, the state-court record, and related transcripts. (ECF #24). Mr. Gales filed his Traverse on May 8, 2025. (ECF #28).

For the reasons below, I recommend the District Court **DISMISS** Ground Seven as not cognizable, **DENY** Grounds One through Six and Ground Eight as without merit, and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Gales a certificate of appealability (COA) on all grounds.

1

PROCEDURAL HISTORY

**A.      State court factual findings**

The Ohio Court of Appeals, Ninth Appellate District, set forth the pertinent facts. These factual findings are presumed correct unless Mr. Gales rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Ninth District determined:

> {¶2} The Akron Police Department began investigating Mr. Gales after receiving a tip that he was selling drugs out of his apartment. Members of the Street Narcotics Uniform Detail ("SNUD") Unit conducted surveillance at his residence and arranged for a controlled buy, during which an informant successfully purchased from Mr. Gales a substance that tested positive for the presence of fentanyl. Based on the results of the investigation that took place, a search warrant for the apartment was obtained. Mr. Gales was at home when officers executed the warrant and attempted to flee when they breached his back door. Upon searching his apartment, the police uncovered over 35 grams of cocaine, over 10 grams of crack cocaine, a large quantity of stimulants identified as NoDoz, several scales, two blenders containing white powder, baggies and spoons, two handguns with filed down serial numbers, and $4,061 in cash.

> {¶3} Mr. Gales was indicted on charges of trafficking in cocaine, possession of cocaine, aggravated trafficking in fentanyl, possession of fentanyl, having a weapon under disability, and possessing a defaced firearm. His two trafficking counts also contained forfeiture specifications for the cash the police seized from his apartment. It is undisputed that the State later dismissed the counts related to fentanyl and one of the forfeiture specifications.

> {¶4} The trial court appointed counsel for Mr. Gales, but a breakdown in communication led his attorney to withdraw as well as two other attorneys that the trial court later appointed to represent him. Following the withdrawal of his third attorney, Mr. Gales chose to represent himself, and the matter proceeded to trial. A jury found Mr. Gales guilty on all counts, and the trial court merged his trafficking and possession counts as allied offenses of similar import.

> {¶5} The trial court sentenced Mr. Gales to six years on his trafficking count, three years on his count for having a weapon under disability, and 180 days on his count for possessing a defaced firearm. The court ordered the first two terms to run consecutively for a total of nine years in prison and ordered the 180-day term to run concurrently with that sentence. The court further ordered the forfeiture of the cash seized from Mr. Gales' residence.

(ECF #24-1 at PageID 482-83; *see also State v. Gales*, No. 29316, 2022 WL 792108, at *1 (Ohio Ct.

App. March 16, 2022), *appeal not allowed*, 189 N.E.3d 828 (Ohio 2022) (table)).

**B.      Trial court proceedings**

On December 29, 2017, through counsel, Mr. Gales moved to suppress evidence recovered

during the search of his apartment and statements taken from him, claiming law enforcement

lacked probable cause to justify a search and he was questioned in violation of his *Miranda* rights.

(ECF #24-1 at PageID 184). Mr. Gales also moved to compel the government to disclose a

confidential informant's identity (*id.* at PageID 189) and to compel law enforcement to give all

information acquired during its investigation to the prosecuting attorney (*id.* at PageID 193). After

a hearing, the trial court denied the motion to suppress. (*Id.* at PageID 196).

In April 2018, through counsel, Mr. Gales requested a *Franks* hearing to show the search

warrant affidavit was based on a false statement. (*Id.* at PageID 201). In November 2018, the trial

court determined Mr. Gales, through new counsel, "failed to make a preliminary showing that any

false statement which was knowingly, intentionally, or with reckless disregard for the truth was

included in the warrant affidavit" and denied the *Franks* motion without an evidentiary hearing.

(*Id.* at PageID 206).

On January 3, 2019, Mr. Gales filed six pro se motions for grand jury transcripts, lab

testing, a *Darden* hearing, a *Mapp* hearing, the trial judge's recusal, depositions, and dismissal for a

violation of his right to a speedy trial. (*Id.* at PageID 207-28). Soon after, Mr. Gales filed pro se

motions to continue the trial date and to dismiss. (*Id.* at PageID 229-36). On January 9, the trial

court denied his motions. (*Id.* at PageID 237-42). On January 16, the day of trial, Mr. Gales signed

a voluntary waiver of the right to counsel and represented himself during the trial. (*Id.* at PageID

249-50). On January 17, the jury convicted him of trafficking in cocaine and the attendant criminal forfeiture specification, possession of cocaine, having a weapon while under disability, and possessing a defaced firearm. (*Id.* at PageID 251). On February 6, the trial court dismissed the remaining charges and sentenced Mr. Gales to 9 years of prison. (*Id.* at PageID 252-53). On February 12, Mr. Gales moved for release on bail and to suspend the execution of his sentence during the pendency of his appeal under Ohio Appellate Rule 8. (*Id.* at PageID 254-55). The trial court denied the motion. (*Id.* at PageID 259).

## C.     Direct appeal

On February 12, 2019, Mr. Gales appealed the judgment to the Ninth District. (ECF #24-1 at PageID 260). In April 2020, the Ninth District dismissed Mr. Gale's direct appeal because he failed to file a brief in support. (*Id.* at PageID 325). The Ninth District reinstated Mr. Gales' direct appeal on July 6, 2020. (*Id.* at PageID 400). Mr. Gales, through counsel, raised the following assignments of error:

1.    The appellant was denied effective assistance of counsel when his prior counsel failed to properly and timely present offer of proof to support his *Franks* claim.

2.    The trial court erred in denying the appellant's omnibus motion to suppress evidence.

3.    The appellant's imposed consecutive sentence was contrary to law, and not supported by the record.

4.    The trial court committed reversible error in failing to make required findings on the record prior to sentencing the appellant to serve consecutive sentences.

5.    The guilty verdict on the criminal forfeiture specification as to Count 1 was legally insufficient as a matter of law.

6.    The appellant's convictions for drug possession and drug trafficking were against the manifest weight of the evidence.

4

> 7. The guilty verdicts for the weapons charges are against the manifest weight of the evidence.

(*Id.* at PageID 404) (cleaned up). On March 16, 2022, the Ninth District sustained the fourth and fifth assignments of error, overruled the other errors, and remanded for the trial court to consider the factors for imposing consecutive sentences and make the appropriate findings on the record. (*Id.* at PageID 482-500; *see also Gales,* 2022 WL 792108, at *10).

On May 2, through counsel, Mr. Gales appealed to the Supreme Court of Ohio and raised the following propositions of law:

> 1. The appellant was denied ineffective assistance of counsel under the Sixth Amendment when his prior counsel failed to properly and timely present offer of proof to support his *Franks* claims.
>
> 2. The trial court erred in denying the appellant's omnibus motion to suppress evidence under the Fourth Amendment when there was a complete lack of probable cause to support a search warrant.
>
> 3. The appellant's convictions for drug possession and drug trafficking are against the manifest weight of the evidence.
>
> 4. The guilty verdicts for the weapons charges are against the manifest weight of the evidence.

(*Id.* at PageID 506). On July 5, 2022, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 530; *see also State v. Gales,* 189 N.E.3d 828 (2022) (table)).

## D. Application to reopen the direct appeal

Meanwhile, on June 13, 2022, Mr. Gales, representing himself, moved to reopen the direct appeal under Ohio Appellate Rule 26(B). (ECF #24-1 at PageID 531). He claimed appellate counsel was ineffective for failing to (1) challenge the trial court's subject-matter jurisdiction based on an invalid return of indictment; (2) raise the trial court's error in denying his motion to dismiss; (3) raise trial counsel's errors in "failing to make the legally appropriate argument and to

include his *Franks* challenge in his motion to disclose the confidential informant"; (4) "challenge specific aspects of the search warrant affidavit in his motion to suppress"; and (5) raise the trial court's error in denying his motion to disclose the confidential informant without considering the merits. (*Id.* at PageID 532-40). On September 12, the Ninth District declined to reopen the direct appeal. (*Id.* at PageID 549-52).

Though Mr. Gales filed his application pro se, the Ninth District sent a copy of the judgment to counsel who represented Mr. Gales on direct appeal. (*Id.* at PageID 711). On September 29, Mr. Gales filed a notice with the Ninth District clerk that he is no longer represented by counsel and requested a copy of the Ninth District's decision. (*Id.* at PageID 553-54). On October 3, Mr. Gales moved for an extension of time to file a motion for reconsideration of the Ninth District's denial of his request to reopen the direct appeal. (*Id.* at PageID 555). There, Mr. Gales explained he filed the application to reopen pro se, but the clerk sent a copy of the judgment to his former counsel on direct appeal. (*Id.* at PageID 556-57). He specified that a copy of the judgment was necessary to proceed with his appeal. (*Id.* at PageID 557). The Ninth District denied the motion, noting Mr. Gales did not give notice to the clerk to serve journal entries and court notices on him rather than his former counsel of record. (*Id.* at PageID 562). Mr. Gales did not file a motion for reconsideration or appeal to the Supreme Court of Ohio.

**E.      Resentencing on remand from the Ninth District**

On November 16, 2022, Mr. Gales appeared in the trial court for a resentencing hearing. (ECF #24-1 at PageID 563). Consistent with the Ninth District's order on remand, the trial court dismissed the criminal-forfeiture specification to the cocaine trafficking count and ordered the seized funds released to a third-party associated with Mr. Gales. (*Id.*). The trial court imposed the

same sentence of 9 years' imprisonment and made the required findings to impose consecutive

sentences. (*Id.* at PageID 563-65).

On December 14, Mr. Gales appealed the judgment to the Ninth District and raised the

following assignments of error:

1. Counsel is ineffective after remand when counsel fails to afford defendant all due process rights made available when defendant's sentence is vacated and defendant is in the same position as if there was no sentence imposed.

2. A trial court abuses its discretion when it fails to consider examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

3. Once the trial court finds that the offender has been convicted of allied offenses of similar import it is error to impose sentence on each count.

4. The trial court abused its discretion when it imposed consecutive sentences without making any of the required and necessary findings under Ohio Revised Code § 2929.14(C)(4)(a)-(c).

5. The trial court failed to make the required findings to impose consecutive sentences under Ohio Revised Code § 2929.14(C).

6. A trial court has a duty to impose sentence in accordance with the amended statutes if the punishment has not already been imposed.

7. Counsel and a trial court's failure to comply with a legal rule is structural error which can be reviewed under plain error Crim R. 52(B) requiring reversal.

(*Id.* at PageID 569-70) (cleaned up). The Ninth District overruled the assigned errors and affirmed

the trial court's judgment. (*Id.* at PageID 655-62). It also denied Mr. Gales' later motion for

reconsideration of its decision. (*Id.* at PageID 669-70).

On December 29, 2023, Mr. Gales appealed the decision to the Supreme Court of Ohio,

raising a single issue:

On remand from the court of appeals whether a full or partial remand to correct the lower court's sentencing, a defendant may challenge the sentence, conviction, or both even when the only change in the state-court proceeding relates to the sentence,

7

or there is a material change in the sentence, because the court must issue a new
judgment that imposes the modified sentence and reinstates the conviction.

(*Id.* at PageID 674). On February 20, 2024, the Supreme Court of Ohio declined to hear his
appeal. (*Id.* at PageID 698).

## F.     Miscellaneous postconviction motions

After Mr. Gales noticed his appeal of the trial court's judgment and sentence but before
the Ninth District dismissed the appeal for failing to file a brief support, Mr. Gales filed multiple
motions in the trial court, including a motion for withdrawal of counsel and preparation of trial
transcripts (March 13, 2019), a renewed motion for release on bail during the pendency of his
appeal (May 1, 2019), motion to the court reporter for exhibits (Sept. 11, 2019), motion for final
appealable order (Sept. 25, 2019), motion for leave and motion for new trial (Sept. 25, 2019),
motion for trial under Crim. R. 33(1) (Sept. 25, 2019), motion for enlargement of time (Oct. 30,
2019), and amended motion for enlargement of time (Oct. 31, 2019). (*Id.* at PageID 350-89). On
May 23, 2019, the trial court denied the renewed motion for release during the pendency of his
appeal. (*Id.* at PageID 358). On June 19, 2020, the trial court denied the remaining motions. (*Id.* at
PageID 390-92).

**FEDERAL HABEAS PETITION**

Before this court Mr. Gales raises eight grounds for relief, as follows:

**Ground One:** Ineffective assistance of counsel. Counsel failed to properly and timely
present offer of proof to support petitioner's *Franks* claim. Counsel never presented
a detailed affidavit from petitioner or made an offer of proof to make a substantial
preliminary showing to support a *Franks* evidentiary hearing.

**Ground Two**: Ineffective assistance of appellate counsel. Appellate counsel erred by
not raising ineffectiveness of trial counsel for failing to challenge subject matter
jurisdiction. There was no bindover order showing municipal court relinquished

jurisdiction. Petitioner never received a preliminary hearing and was not indicted within the time required under the Ohio Revised Code.

**Ground Three**: Ineffective assistance of appellate counsel for failing to raise an assignment of error that the trial court committed reversible error when it denied petitioner's motion to dismiss for not indicting or providing for a preliminary hearing (which was never waived) in the required time under the Ohio Revised Code.

**Ground Four**: Ineffective assistance of appellate counsel. Appellate counsel failed to raise ineffective assistance of counsel for failing to make a legally appropriate argument and to include the *Franks* challenge in his motion to disclose the identity of the confidential informant and to ensure said hearing. Trial counsel filed a motion but did not try to prevail.

**Ground Five**: Ineffective assistance of appellate counsel. Appellate counsel was ineffective for failing to raise that trial counsel was ineffective when he failed to challenge specific aspects of the search warrant affidavit in the motion to suppress. The affidavit relied upon for the basis of probable cause contained stale information of uncorroborated controlled buy and hearsay evidence.

**Ground Six**: Ineffective assistance of appellate counsel. Appellate counsel was ineffective when he failed to raise that trial court erred when it denied petitioner's motion to compel to disclose the identity of the confidential information. Court denied the motion in a blanket denial before the start of trial. At trial petitioner asked a witness for the identity of the confidential informant but the state objected, and the court sustained the objection.

**Ground Seven**: Denial of a fair hearing. The trial court denied petitioner a fair hearing when it denied petitioner's motion under App. R. 26(B) without reaching the merits. Appellate court denied petitioner for not showing that petitioner was prejudiced at the first stage of the analysis.

**Ground Eight**: Ineffective assistance of counsel at resentencing: where counsel failed to adequately prepare and investigate for resentencing, counsel failed to protect petitioner's procedural due process.

(ECF #1 at PageID 5-11; ECF #13-1 at PageID 90). Mr. Gales asks the court to grant the writ, find that counsel was ineffective, order suppression of the evidence and disclosure of the confidential informant's identity, and order a new trial. (ECF #1 at PageID 19).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Gales' petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). For the purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially

indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent, which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable considering the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

11

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Indeed, federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including the statute of limitations, exhaustion of state remedies, and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). On top of those procedural barriers a petitioner must overcome, the federal habeas court's review is limited to federal constitutional claims. Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not

12

properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004). Two procedural barriers are relevant to Mr. Gales' petition:

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two avenues by which a petitioner may procedurally default a claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

A finding of procedural default is not the end of a habeas claim. A petitioner can overcome the procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard

13

of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To show prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id.* There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural bar through a convincing claim of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). By such a showing, a petitioner can overcome the expiration of the statute of limitations, *see id.*, and a procedural default. *See Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Sixth Circuit recently summarized:

> This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he factually did not

> commit the crime. Of course, dismantling the state's case is relevant and helpful to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself.

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (emphasis in original), *cert. denied*, 145 S.Ct. 1201 (2025). A valid actual innocence claim must be supported by new, reliable evidence that was not presented at trial and is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup*, 513 U.S. at 324. Such evidence can include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Id.* But this evidence must show that, "more likely than not[,] any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

**State Law Claims Not Cognizable on Federal Habeas Review.** Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). The reviewing district court "does not function as another state appellate court to review a state

court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief simply by asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

## ANALYSIS

The State contends Grounds Two through Seven are procedurally defaulted because Mr. Gales did not pursue the claims through the state's ordinary appellate procedures, Ground Seven is not cognizable on federal habeas review, and the remaining claims in Grounds One and Eight are meritless. (ECF #24 at PageID 156, 160-70). The State did not address the merits of Mr. Gales' claims in Grounds Two through Seven or provide an argument for non-cognizability in Ground Seven. Mr. Gales maintains he can overcome procedural default through a showing of cause and prejudice and argues the merits of each ground for relief. (ECF #28).

16

A.      **Procedural Default and Cognizability**

1.      **Mr. Gales could arguably establish cause to excuse his procedural default of Grounds Two through Six.**

Mr. Gales raised the claims in Grounds Two through Six in his application to reopen the direct appeal under Appellate Rule 26(B), (ECF #24-1 at PageID 533-39), but did not appeal the Ninth District's judgment to the Supreme Court of Ohio. The time to do so has expired. *See* Ohio S.Ct.Prac.R. 7.01(A)(1) (providing appellant 45 days to appeal judgment to Supreme Court of Ohio). Ohio law does not allow for delayed appeals from the denial of Rule 26(B) applications. *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(c). Thus, Mr. Gales' failure to pursue those claims through Ohio's "ordinary appellate review procedures" renders them procedurally defaulted. *Williams*, 460 F.3d at 806.

For cause, Mr. Gales asserts the Ninth District did not send notice and a copy of the decision denying his Rule 26(B) application to him but to the attorney who represented him on direct appeal. (ECF #28 at PageID 791-93). The record shows Mr. Gales was represented by counsel on direct appeal. (ECF #24-1 at PageID 401). The Ninth District affirmed in part, reversed in part, and remanded the case for further proceedings. (*Id.* at PageID 482-501). Through counsel, Mr. Gales filed a timely notice of appeal to the Supreme Court of Ohio. (*Id.* at PageID 502). While that appeal remained pending, Mr. Gales filed a pro se application to reopen the direct appeal under Rule 26(B) in the Ninth District. (*Id.* at PageID 531). The Ninth District denied the pro se application on September 12, 2022, but sent notice and a copy of the decision to counsel representing Mr. Gales on direct appeal. (*Id.* at PageID 710). On September 29, 2022, Mr. Gales filed a notice with the clerk to serve journal entries on him, not his counsel on direct appeal, and requested a copy of the Rule 26(B) decision. (*Id.* at PageID 553). On October 3, 2022, the Ninth

17

District received Mr. Gales' request for extension of time to file a motion for reconsideration because he had not received a copy of the decision. (*Id.* at PageID 556-57). The Ninth District denied his motion for reconsideration because "Appellant never filed a notice with the clerk of courts, directing the clerk to serve journal entries and court notices on him rather than his former counsel of record. *See* Loc.R. 30(B)." Under Local Rule 30(B) of the Ninth Appellate District, the parties are directed as follows:

> If a party who had previously been represented by counsel intends to appear pro se when filing a post-judgment motion, the party shall file a notice with the clerk of courts to direct the clerk to serve journal entries and court notices on the party at the party's address specified in the notice rather than on the former counsel of record.

According to Mr. Gales, he still had not received a copy of the decision when, on October 18, 2022, he was transported to the Summit County jail for resentencing by the trial court on remand from the direct appeal. (ECF #28 at PageID 791-92; *see* ECF #24-1 at PageID 700). He contends he began to draft a notice of appeal of the Ninth District's Rule 26(B) decision to the Supreme Court of Ohio, but his transfer prevented him from completing the draft. (ECF #28 at PageID 791-92). Mr. Gales stayed in the Summit County jail until November 23, 2022. (ECF #24-1 at PageID 699). He returned to find that "the documents that he had previously been working on for said appeal had been deleted due to a 30-day deletion of Lexis Nexis files rule at GCI Law Library." (ECF #28 at PageID 792). When Mr. Gales attempted to file his completed Notice of Appeal and Memorandum in Support of Jurisdiction in January 2023, the Clerk of Courts returned the documents with a letter informing him the filing was late and that delayed appeals were not permitted. (*Id.*). Here, he asserts the state-created impediments caused the procedural default. (*Id.* at PageID 793).

18

The Supreme Court instructs that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rule." *Murray,* 477 U.S. at 488. As courts have acknowledged, in certain circumstances, a habeas petitioner's failure to receive timely notice of an unfavorable state court decision may constitute cause to excuse a procedural default. *See, e.g., Nicholson v. Morgan,* No. 3:20-cv-2545, 2022 WL 4072473, at *9 (N.D. Ohio Aug. 11, 2022) (noting that petitioner "could arguably establish cause to excuse his procedural default because notice of the March 25, 2019 order denying his Rule 26(B) application to reopen was not mailed to him directly and he did not receive notice of the decision until long after the 45-day window within which to appeal to the Ohio Supreme Court"), *report and recommendation adopted,* 2022 WL 4017507 (N.D. Ohio Sept. 2, 2022); *Brown v. Miller,* No. 4:16 CV 600, 2017 WL 10574328, at *11 (N.D. Ohio Oct. 30, 2017) (concluding that petitioner had potential cause to excuse procedural default where petitioner asserted that he was unaware of court of appeals decision), *report and recommendation adopted,* 2018 WL 5023745.

It is clear the Clerk initially mailed a copy of the order on Mr. Gales' Rule 26(B) application to his counsel on direct appeal and not to him. (*See* ECF #24-1 at PageID 710). It is also clear that Mr. Gales subsequently attempted to obtain a copy of that decision by notifying the Clerk to send journal entries to him. (*Id.* at PageID 553-54). Taking Mr. Gales at his word that he did not receive the decision until he returned to the prison from resentencing in November 2022, the combined effects of the Clerk's failure to send him a copy of the decision directly and his removal from the institution for resentencing may have contributed to the delay. Even still, it

appears Mr. Gales had an initial obligation to send notice to the Clerk under Ninth District Local Rule 30(b) when he filed his Rule 26(B) application.

The Supreme Court has held that federal courts need not address issues concerning procedural default before deciding against the petitioner on the merits. *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). In this case, the State has not disputed this basis for establishing cause (*See* ECF #24 at PageID 157) and procedural default presents a complicated question about state-law duties and obligations under the Local Rules that is unnecessary to the disposition of his petition. I therefore analyze whether the claims in the petition allege violations of federal constitutional law and, if appropriate, address the merits of those claims.

### 2. Ground Seven is not cognizable on federal habeas review because it only challenges the denial of his Rule 26(B) application and not Mr. Gales' convictions.

In Ground Seven, Mr. Gales asserts the Ninth District denied him a fair hearing when it "denied petitioner's motion under App. R. 26(B) without reaching the merits."[1] (ECF #1 at PageID 10). Mr. Gales claims the Ninth District violated his due process rights by not following the correct procedure to decide claims in his Rule 26(B) application. (ECF #28 at PageID 807).

---

[1] In his petition, Mr. Gales stated the trial court denied him a fair hearing and the appellate court did not analyze his claims in accordance with the proper procedure for deciding whether to reopen a defendant's direct appeal. (ECF #1 at PageID 10). In the Traverse, Mr. Gales asserts the appellate court denied him a fair hearing and failed to analyze the claims properly. (ECF #28 at PageID 805). Trial courts do not adjudicate Rule 26(B) applications. *See* Ohio App.R. 26(B) ("An application for reopening shall be filed in the court of appeals where the appeal was decided"). I will assume Mr. Gales mistakenly referred to the trial court in Ground Seven and analyze the claim in relation to the appellate court. *See Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir. 1985) (allegations in a pro se habeas petition are entitled to liberal construction).

The State suggests the claim is not cognizable on federal habeas review but offers no analysis supporting that position. (ECF #24 at PageID 156).

The Ninth District denied Mr. Gales' application as follows:

"Claims of ineffective assistance of appellate counsel under App.R. 26(B) are subject to the two-pronged analysis enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984)." To demonstrate ineffective assistance of counsel, the applicant must show that "counsel's representation fell below an objective standard of reasonableness" and that, but for the deficient representation, there is a reasonable probability that the movant would have been successful on appeal. "The burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel."

"[I]n Ohio, a properly licensed attorney is presumed competent. "*Strickland* charges us to 'appl[y] a heavy measure of deference to counsel's judgments, 466 U.S. at 691, and to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' *Id.* at 689." Moreover, it is well established that "[c]ounsel need not raise all nonfrivolous issues on appeal." "Counsel may limit the number of arguments raised in order to focus on those issues most likely to bear fruit."

Appellant argues that he received ineffective assistance of appellate counsel because his attorney failed to assign as error that: (1) the trial court lacked subject matter jurisdiction over his case due to an invalid return of his indictment; (2) the trial court erred by denying his motion to dismiss the matter due to a lack of compliance with preliminary hearing and initial appearance requirements; (3) the trial court erred by summarily denying his motion to disclose the identity of the State's confidential informant; and (4) trial counsel was ineffective on several grounds. According to Appellant, trial counsel was ineffective for not pursuing the disclosure of a confidential informant referenced in the State's search warrant affidavit and for not challenging the affidavit on the basis that it contained stale information.

Upon review, this Court cannot conclude that Appellant has shown there is a "'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." To the extent Appellant argues that his appellate counsel ought to have challenged the lower court's subject matter jurisdiction or compliance with preliminary hearing and initial appearance requirements, we note that common pleas courts have subject matter jurisdiction over felony cases, R.C. 2931.03, and "a valid indictment can be returned subsequent to either a nolle prosequi or a dismissal of prior felony charges for failure to provide a preliminary hearing within 15 day of the initial arrest." Appellate counsel may well have determined as a matter of strategy that any argument related to the lower court's subject matter jurisdiction or alleged

21

failure to conduct a preliminary hearing and/or initial appearance within a specific timeframe was unlikely to succeed.

Appellant's remaining arguments all pertain to the State's search warrant affidavit and the non-disclosure of the identity of the confidential informant referenced therein. The State's affiant averred that, within fourteen days of the filing of the search warrant, the police conducted a controlled buy at Appellant's apartment and their confidential informant purchased drugs from Appellant. According to Appellant, that information was both stale and untrue, so his appellate counsel should have challenged the trial court's limited ruling on his motion to disclose the informant's identity and his trial counsel's failure to fully litigate that disclosure and argue the staleness of the informant's information. As this Court noted on appeal, however, the search warrant affidavit contained a wealth of information apart from that provided by the confidential informant:

> That information included statements that (1) [Appellant] told an information source he had fentanyl for sale, (2) a second independent and reliable information source reported [Appellant] was trafficking fentanyl and other narcotics out of his apartment, (3) [Appellant] had a history of drug offenses including trafficking and possession, and (4) members of the SNUD Unit observed signs indicative of drug activity while performing surveillance at [Appellant's] apartment (*i.e.*, individuals entering and exiting the apartment in a short period of time and known prostitutes coming and going from the apartment).

Appellant has not shown that there exists a reasonable probability that, but for his appellate counsel's failure to pursue arguments related to the identity of the confidential informant and/or the staleness of the information the informant provided, the result of this proceeding would have been any different.

Upon review, Appellant has not satisfied his burden of establishing a "genuine issue" of ineffective assistance of appellate counsel.

(ECF #24-1 at PageID 549-52) (cleaned up).

According to Mr. Gales, the Ninth District erred because it did not comply with the procedural requirements for reviewing claims in Rule 26(B) applications. (ECF #28 at PageID 807) ("Petitioner was not required to show that there exists a reasonably probability that he would have been successful on any one of the five colorable claims presented in his application to reopen [under] App.R. 26(B), [because] that was to be shown at the second stage of the application."). In

22

support, Mr. Gales cites *State v. Leyh,* 185 N.E.3d 1075 (Ohio 2022), which held that Ohio appellate courts adjudicating ineffective assistance of counsel claims under Appellate Rule 26(B) must follow a two-step process:

> [T]he two-state procedure prescribed by App.R. 26(B) requires that the applicant seeking permission to reopen his direct appeal show at the first stage that there is at least a genuine issue—that is, legitimate grounds—to support the claim that the applicant was deprived of the effective assistance of counsel on appeal. If that showing is made and the application is granted, the applicant must then establish at the second stage the merits of both the direct appeal and the claim of ineffective assistance of counsel.

*Id.* at 1080 (citations omitted).

Mr. Gales' claim challenging the state's alleged failure to apply Rule 26(B) as interpreted in *Leyh* is not cognizable on federal habeas review. In *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007), the Sixth Circuit analyzed a petitioner's challenge to the validity of the state court's conduct during his postconviction proceedings and held:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton,* 794 F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby,* 794 F.2d at 246 (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints

about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings cannot provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Id.* (cleaned up) (emphasis in original).

In this case, even if the District Court found merit and resolved the claim in Mr. Gales' favor, he would not be entitled to release from custody because this claim does not challenge the underlying state convictions giving rise to his imprisonment. Thus, the claim is not cognizable on federal review. *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002) (holding that the habeas petitioner's claim that he was "deprived . . . of a full and fair hearing in the appellate review of his post-conviction claims" was not a cognizable ground for federal habeas relief") (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)).

I thus recommend the District Court **DISMISS** Ground Seven as not cognizable on federal habeas review.

**B.    Merits Review**

In his remaining grounds for relief, Mr. Gales asserts claims for ineffective assistance of trial and appellate counsel. Because the Ninth District adjudicated those claims on the merits (*see* ECF #24-1 at PageID 549-52), its decision is subject to AEDPA deference. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F.App'x 208, 225 (6th Cir. 2019). It bears repeating that AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell*, 543 U.S. at 455 (cleaned up). To meet AEDPA's standard, Mr. Gales must demonstrate the Ninth District's adjudication of his ineffective-assistance

24

claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d).

For a habeas petitioner to establish that counsel's representation was constitutionally deficient, the petitioner must show (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Proper analysis under *Strickland* is "highly deferential." *Id.* at 689. According to the Supreme Court:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (citation omitted). To satisfy the prejudice requirement of *Strickland*, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694. In addition to outcome determination, the court's analysis must give attention to "whether the result of the proceeding was fundamentally unfair or unreliable. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S.

25

364, 369-70 (1993). Failure to satisfy either requirement is fatal to an ineffective-assistance-of-counsel claim. *Strickland,* 466 U.S. at 697. And although the habeas petitioner must prove each element of the two-part *Strickland* test to show ineffective assistance of counsel, courts need not conduct an analysis under both prongs. *Id.*

Federal habeas claims based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe,* 742 F.3d 221, 226 (6th Cir. 2014) (citation omitted). In addition to the considerable deference given to counsel's decisions, AEDPA requires federal courts on habeas review to give deference to the state court. *See Burt,* 571 U.S. at 15 (AEDPA's doubly deferential standard requires the court to give "both the state court and the defense attorney the benefit of the doubt"). The question is not whether counsel's actions were reasonable but whether any reasonable argument exists that counsel satisfied *Strickland's* deferential standard. *Harrington,* 562 U.S. at 105.

> **1.    Grounds One and Four lack merit because Mr. Gales has not shown the allegedly fictitious confidential informant was necessary for probable cause.**

In Ground One, Mr. Gales claims his trial counsel did not "properly and timely present [an] offer of proof to support [his] *Franks* claim." (ECF #1 at PageID 5). The Ninth District analyzed this claim as follows:

> {¶15} In his first assignment of error, Mr. Gales argues that he received ineffective assistance of counsel because his former counsel did not submit an offer of proof in support of his request for a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978). Upon review, this Court rejects Mr. Gales' first assignment of error.

> {¶16} To prove ineffective assistance of counsel, an appellant must establish both that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for

counsel's errors, the result of the trial would have been different." If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong.

{¶17} Notably, Mr. Gales proceeded to trial pro se. The general rule is that "[t]he law pertaining to effective assistance of counsel does not apply when the defendant exercises his right to self-representation." That is because the "constitutional right to represent oneself would become a hollow right and its assertion would most likely be rejected with regularity if pro se defendants were permitted to assign as error their own ineffectiveness." It is Mr. Gales' contention, however, that he received ineffective assistance of counsel prior to the removal of his counsel and his decision to proceed pro se. He seeks to challenge not his own ineffectiveness, but the alleged ineffectiveness of his former counsel. Assuming without deciding that his ineffective assistance of counsel argument is properly before us, we nevertheless conclude that it lacks merit.

{¶18} "There is * * * a presumption of validity with respect to the affidavit supporting [a] search warrant." "In *Franks* * * *, the United States Supreme Court squarely addressed the issue of when a defendant, under the Fourth Amendment, is entitled to a hearing to challenge the veracity of the facts set forth in the warrant affidavit after the warrant has been issued and executed."

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Importantly, even if the foregoing requirements are satisfied, "an evidentiary hearing * * * is not mandated by the Fourth Amendment if, after the affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause."

{¶19} The record reflects that Mr. Gales' former counsel requested an evidentiary hearing pursuant to *Franks v. Delaware* to challenge the validity of the affidavit underlying the search warrant for Mr. Gales' apartment. It was Mr. Gales' position that the affidavit contained a false statement. Specifically, he challenged the affiant's statement that a controlled buy was conducted at the apartment within fourteen days of the filing of the warrant affidavit. Mr. Gales was prepared to offer testimony that he did not sell drugs to a confidential informant at his apartment within those two weeks. The trial court refused to conduct a hearing on the issue, however, finding

27

that Mr. Gales had not tendered a sufficient offer of proof. Mr. Gales now claims that he received ineffective assistance of counsel because his former counsel failed to "submit an offer of proof of some type" in support of his claim. According to Mr. Gales, had his counsel submitted even a detailed affidavit in support of his claim, he would have been entitled to an evidentiary hearing.

{¶20} As previously noted, even when a sufficient offer of proof has been made under *Franks v. Delaware*, no evidentiary hearing is required if, "after the affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause." Mr. Gales has not addressed the remainder of the information included in his search warrant affidavit. That information included statements that (1) Mr. Gales told an information source he had fentanyl for sale, (2) a second independent and reliable information source reported Mr. Gales was trafficking fentanyl and other narcotics out of his apartment, (3) Mr. Gales had a history of drug offenses including trafficking and possession, and (4) members of the SNUD Unit observed signs indicative of drug activity while performing surveillance at Mr. Gales' apartment (*i.e.*, individuals entering and exiting the apartment in a short period of time and known prostitutes coming and going from the apartment). Mr. Gales has made no attempt to explain why the foregoing information would not have been sufficient to support a finding of probable cause, and this Court will not construct an argument on his behalf. Upon review, Mr. Gales has not shown that, but for his former counsel's failure to submit an offer of proof in support of his *Franks v. Delaware* claim, he would have received an evidentiary hearing. Thus, this Court cannot conclude that he has established his claim of ineffective assistance of counsel. Mr. Gales' first assignment of error is overruled.

(ECF #24-1 at PageID 487-91, *see also Gales*, 2022 WL 792108, at *4-5) (citations omitted).

Mr. Gales has not established the Ninth District's decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or was based on an unreasonable determination of facts, as required to obtain habeas relief. 28 U.S.C. § 2254(d). In *Franks v. Delaware*, the Supreme Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

28

438 U.S. 154, 155-56 (1978). A counsel's failure in relation to a defendant's request for a *Franks* hearing may be the basis for an ineffective assistance of counsel claim, but only if the defendant would have been entitled to a *Franks* hearing. *Robinson v. United States*, No. 3:06-CR-094-RLJ-CCS, 2014 WL 4802903, at *7 (E.D. Tenn. Sept. 26, 2014) (citing cases). Although Mr. Gales contends his trial counsel was ineffective by not submitting an offer of proof to substantiate Mr. Gales allegation that a "false statement knowingly and intentionally, or with reckless disregard for the truth," was included in the warrant affidavit, the Ninth District reasonably concluded that even if that threshold was met, Mr. Gales had not shown the allegedly fictitious confidential informant was necessary to a finding of probable cause. Thus, he did not establish was entitlement to a *Franks* hearing and so the Ninth District reasonably determined his counsel was not ineffective.

Similar to Ground One, in Ground Four, Mr. Gales claims appellate counsel failed to raise trial counsel's allegedly deficient performance regarding the *Franks* hearing. (ECF #1 at PageID 9). Because trial counsel was not ineffective, it follows that appellate counsel could not be ineffective for failing to raise ineffective assistance of trial counsel on direct appeal.

I recommend the District Court **DENY** Grounds One and Four as meritless.

2.      **Grounds Two and Three lack merit because the state trial court had subject-matter jurisdiction, and any challenge based on the timing of a preliminary hearing would have been futile.**

In Ground Two Mr. Gales argues appellate counsel was ineffective because he did not raise trial counsel's failure to challenge the court's subject-matter jurisdiction. (ECF #1 at PageID 6). Mr. Gales asserts the trial court lacked subject-matter jurisdiction because the municipal court did not relinquish jurisdiction through a bindover order and he did not have a preliminary hearing or receive the indictment within the period set forth in the Revised Code. (*Id.*). Relatedly, in Ground

29

Three Mr. Gales claims appellate counsel failed to raise as error the trial court's denial of his motion to dismiss based on procedural errors in the charging process. (ECF #1 at PageID 8).

In the trial court, he asserted two grounds for dismissal. First, he argued he did not have a preliminary hearing within 15 days of arrest and instead was indicted 23 days after arrest. (ECF #24-1 at PageID 232). Second, he asserts he was not advised of his right to a preliminary hearing during his initial appearance in the municipal court. (*Id.* at PageID 233). In his Rule 26(B) application Mr. Gales alleged his right to a preliminary hearing was extinguished and he was "illegally indicted" outside the prescribed time limits in Revised Code § 2945.71 and Ohio Criminal Rule 5(B) and appellate counsel's failure to raise that issue on appeal constituted ineffective assistance of counsel. (*Id.* at PageID 534). The Ninth District determined appellate counsel was not ineffective because "[a]ppellate counsel may well have determined as a matter of strategy that any arguments related to the lower court's subject matter jurisdiction or alleged failure to conduct a preliminary hearing and/or initial appearance within a specific timeframe were unlikely to succeed." (ECF #24-1 at PageID 551). As the state court explained, Ohio common pleas courts have subject-matter jurisdiction under Revised Code § 2931.03 and "a valid indictment can be returned subsequent to either a nolle prosequi or a dismissal of prior felony charges for failure to provide a preliminary hearing within 15 days of the initial arrest." (*Id.*) (citation omitted).

An Ohio trial court's jurisdiction arises from the return of an indictment, not from the preliminary hearing. *Douglas v. Maxwell*, 194 N.E.2d 576 (Ohio 1963); *see also Gotel v. Gansheimer*, No. 2006-A-0087, 2007 WL 1395446, at *3 (Ohio Ct. App. May 11, 2007) ("the jurisdiction of a common pleas court over a criminal action does not hinge upon the propriety of the proceedings before the municipal court"). Mr. Gales' argument that the trial court did not have subject matter

jurisdiction because the municipal court did not properly relinquish jurisdiction is meritless. Additionally, the determination of whether a state court had jurisdiction under state law is properly made by the state courts, not the federal judiciary. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). The Court is thus also bound by the Ninth District's determination that the trial court had subject-matter jurisdiction under state law.

Moreover, in Ohio, failing to provide the accused with a preliminary hearing during the time limits of Ohio Revised Code § 2945.71 and Criminal Rule 5(B) is not fatal to a conviction based on a subsequent indictment for the same offense. *See State v. Zaffino*, No. 21514, 2003 WL 23095392, at *3 (Ohio Ct. App. Dec. 31, 2003) ("Ohio courts have held that where a charge is dismissed pursuant to a nolle prosequi, another prosecution of the same offense is permissible.") (citation omitted); *Styer v. Brichta*, 591 N.E.2d 1255, 1258 (Ohio Ct. App. 1990) ("If the time limits for a preliminary hearing have been exceeded the state may nevertheless prosecute by way of original indictment."); *State v. Pugh*, 372 N.E.2d 1351, 1351 (Ohio 1978) (per curiam) (holding that failure to conduct a timely preliminary hearing within 15 days as required under the statutes did not preclude conviction on a subsequent grand jury indictment on the same charge).

Thus, even if trial counsel had raised the issue of a preliminary hearing and the charges against Mr. Gales were dismissed at that time, that dismissal would have been without prejudice and the State could still prosecute pursuant to a subsequent indictment. One can reasonably conclude it would serve no purpose for counsel to raise the issue given its futility, resulting in prosecution for the same offense by indictment. Defense counsel cannot be deemed deficient for failing to take action that would have been futile. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th

Cir. 1996). Therefore, the Ninth District's conclusion that appellate counsel was not deficient for failing to raise a fruitless claim is a reasonable application of *Strickland*.

Moreover, Mr. Gales' underlying concern that a state court violates a defendant's federal right to due process when the state's charging procedure bypasses a preliminary hearing without a waiver is meritless because there is no federal constitutional right to a preliminary hearing. *See Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).

I thus recommend the District Court **DENY** Grounds Two and Three as meritless.

### 3. Ground Five lacks merit because the search warrant of Mr. Gales' residence was not based on stale information.

In Ground Five, Mr. Gales alleges appellate counsel failed to raise trial counsel's failure to challenge specific aspects of the search warrant, including staleness of the information. (*Id.* at PageID 9-11). The Ninth District ruled on the merits of this claim as follows:

> Appellant's remaining arguments all pertain to the State's search warrant affidavit and the non-disclosure of the identity of the confidential informant referenced herein. The State's affiant averred that, within fourteen days of the filing of the search warrant, the police conducted a controlled buy at Appellant's apartment and their confidential informant purchased drugs from Appellant. According to Appellant, that information was both stale and untrue, so his appellate counsel should have challenged the trial court's limited ruling on his motion to disclose the informant's identity and his trial counsel's failure to fully litigate that disclosure and argue the staleness of the informant's information. As this Court noted on appeal, however, the search warrant affidavit contained a wealth of information apart from that provided by the confidential informant.

> That information included statements that (1) [Appellant] told an information source he had fentanyl for sale, (2) a second independent and reliable information source reported [Appellant] was trafficking fentanyl and other narcotics out of his apartment, (3) [Appellant] had a history of drug offenses including trafficking and possession, and (4) members of the SNUD Unit observed signs indicative of drug activity while performing surveillance at [Appellant's] apartment (i.e., individuals entering and exiting the apartment in a short period of time and known prostitutes coming and going from the apartment).

> Appellant has not shown that there exists a reasonable probability that, but for his appellate counsel's failure to pursue arguments related to the identity of the confidential informant and/or the staleness of the information the informant provided, the result of this proceeding would have been any different.
>
> Upon review, Appellant has not satisfied his burden of establishing a "genuine issue" of ineffective assistance of appellate counsel. His application for reopening is, therefore, denied.

(ECF #24-1 at PageID 551-52). For the following reasons, the Ninth District's rejection of Mr. Gales' claims was reasonable.

The Supreme Court instructs that "where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Mr. Gales is correct that "stale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). That said, he has not shown any information in the search warrant affidavit was stale. Staleness is "determined by the circumstances of each case." *Sgro v. United States*, 287 U.S. 206, 210-11 (1932). Courts in the Sixth Circuit and in Ohio have long recognized a "general principle that when 'the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.'" *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (quotation omitted); *see also State v. Ridgeway*, No. 00CA19, 2001 WL 1710397, at *4 (Ohio Ct. App. Nov. 21, 2001). In *Spikes*, the Sixth Circuit held that facts in a search warrant affidavit were not stale to preclude finding probable cause where the affidavit described a continuing criminal enterprise and just ten days before the application for the warrant law enforcement agents

33

uncovered a number of items in the trash at the premises to be searched that were consistent with an ongoing drug-trafficking operation. 158 F.3d at 924. In *United States v. Perry,* 864 F.3d 412 (6th Cir. 2017), the Sixth Circuit determined that despite the lack of specific dates in the search warrant affidavit, the multiple and repeated activities were observed within a defined period of less than seven weeks before the affidavit was sufficient to support probable cause. *Id.* at 415. In *State v. Gleason,* 199 N.E.3d 1060 (Ohio Ct. App. 2022), the appellate court found that a two-month difference between the purchase of drugs and the issuance of a search warrant did not violate the staleness requirement because the affidavit also showed the ongoing nature of drug trafficking. *Id.* at 1066.

In this case, according to the affidavit, the affiant spoke to an information source who stated Mr. Gales said he had fentanyl for sale. (ECF #28-3 at PageID 840). It is not clear when that conversation occurred, but law enforcement arranged a controlled drug purchase 14 days before requesting the search warrant, using the information source to purchase fentanyl at Mr. Gales' residence. (*Id.*). As further proof of probable cause, the affiant described receiving information from a second information source who stated Mr. Gales trafficked fentanyl and other narcotics from his apartment and promoted prostitution by actively seeking women to traffic narcotics in the adult entertainment bars in Akron. (*Id.* at PageID 841). The second information source was corroborated and verified to have provided accurate and knowledgeable information regarding drug trafficking in numerous previous cases. (*Id.* at PageID 841-42). In addition to listing Mr. Gales' prior arrests for, among other things, possession and trafficking offenses, the affiant also described numerous surveillance operations at Mr. Gales' residence where the affiant observed "short-term traffic" that is "consistent with drug trafficking" and observed "known prostitutes

coming and going from the apartment, which is also indicative of drug trafficking and other illicit activities and corroborates the information source's information regarding Gales' activities." (*Id.* at PageID 842). After considering the totality of the circumstances, I conclude Mr. Gales has not shown that probable cause to search was based on stale information and therefore he cannot show his Fourth Amendment claim is meritorious. The failure to raise a meritless claim is not ineffective assistance of counsel. *Tackett v. Trierweiler,* 956 F.3d 358 (6th Cir. 2020).

I thus recommend the District Court **DENY** Ground Five as meritless.

**4.    Ground Six lacks merit because Mr. Gales has not shown how he was prejudiced by his appellate counsel not appealing the denial of disclosure of the confidential informant's identity.**

In Ground Six, Mr. Gales claims appellate counsel erred by not challenging the trial court's denial of his motion to compel disclosure of the confidential informant's identity. (*Id.* at PageID 12).

Federal and Ohio courts hold that a defendant is entitled to disclosure of a confidential informant's identity when "the testimony of the CI is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams,* 446 N.E.2d 779, 781 (Ohio 1983); *accord Roviaro v. United States,* 353 U.S. 53, 60-62 (1957). The defendant must establish the need for disclosure. *State v. Brown,* 597 N.E.2d 510, 513 (Ohio 1992). The defendant need not prove the necessity of disclosure with evidentiary material, but he must present "more than mere allegations of the necessity of the disclosure." *State v. Feltner,* 662 N.E.2d 15, 17 (Ohio Ct. App. 1993). In general, courts have compelled disclosure in cases involving "an informer who helped set up the commission of the crime and who was present at its occurrence" whenever the informer's testimony may help the

35

defense. *Roviaro,* 353 U.S. at 61; *see also State v. Phillips,* 272 N.E.2d 347, 350 (Ohio 1971). In contrast, "where the informant merely provided information concerning the offense," courts hold disclosure is not required. *State v. Bays,* 716 N.E.2d 1126, 1139 (Ohio 1999).

Mr. Gales, through counsel, moved to compel the government to disclose the confidential informant's identity, arguing the informant was a witness and participant in the alleged unlawful activity. (ECF #24-1 at PageID 189). In his Rule 26(B) application, Mr. Gales claimed trial counsel failed "to make a legally appropriate argument" to compel disclosure and appellate counsel failed to raise ineffective assistance of trial counsel on that basis on direct appeal. (*Id.* at PageID 536-37). Citing the wealth of information in the search warrant affidavit provided other information sources and surveillance of Mr. Gales' residence, the Ninth District determined he had not shown the existence of a reasonable probability that, but for appellate counsel's failure to pursue arguments related to the identity of the confidential informant, the result of the proceeding would have been different. (*Id.* at PageID 552).

In his Traverse, Mr. Gales recites the general proposition that the government must reveal the identity of a confidential informant when the testimony is vital to establish an element of the crime or would help the accused in preparing a defense, but he makes no meaningful argument that appellate counsel's failure to raise the claim prejudiced him. Instead, he merely asserts that if appellate counsel had raised the issue, the result would have been different. (ECF #28 at PageID 805). Conclusory assertions are insufficient to establish prejudice under *Strickland. See Cross v. Stovall,* 238 F.App'x 32, 39-40 (6th Cir. 2007) (holding the defendant's ineffective-assistance claim was "doomed by the fact that she [made] nothing more than conclusory assertions of prejudice"); *see also Strickland,* 466 U.S. at 693 (defendant must affirmatively prove prejudice). Mr. Gales has

not shown that the Ninth District unreasonably applied *Strickland* to resolve this claim and therefore I recommend the District Court **DENY** Ground Six as meritless.

> **5.  Ground Eight is barred by Ohio's doctrine of res judicata and, even if not defaulted, lacks merit because Ohio law would not permit counsel to re-raise arguments in a limited resentencing hearing.**

In Ground Eight, Mr. Gales claims that counsel representing him at his resentencing hearing failed to adequately prepare and investigate for resentencing, thereby failing to protect his procedural due process rights. (ECF #13-1 at PageID 90). The Ninth District remanded Mr. Gales' case for resentencing after concluding on direct appeal the trial court did not make the required statutory findings under Ohio Revised Code § 2929.14(C)(4) to impose consecutive sentences:

> Because the record reflects and the State concedes that the trial court failed to make the required statutory findings, the imposition of consecutive sentences must be reversed, and the matter must be remanded for resentencing so that the trial court "can properly consider R.C. 2929.14(C)(4) and make the necessary findings."

*Gales*, 2022 WL 792108, at *9-10. On remand, the trial court considered Revised Code § 2929.14(C)(4), made the findings necessary to impose consecutive sentences at the sentencing hearing, and included those findings in the sentencing entry. (ECF #24-1 at PageID 252; ECF #24-2 at PageID 774).

Mr. Gales appealed the trial court's judgment (ECF #24-1 at PageID 566), asserting, among other issues not raised here, his counsel was ineffective for not protecting his procedural due process rights when a sentence is vacated, including a full and fair opportunity to be heard. (*Id.* at PageID 581). As part of that full and fair opportunity, Mr. Gales asserted resentencing counsel should have investigated the previous trial record for errors and raised those errors in the resentencing hearing to preserve them for appeal. (*Id.* at PageID 583-85). Mr. Gales also faulted resentencing counsel for not investigating the relevant sentencing statutes and presenting examples

of his rehabilitation for the trial court's consideration at the resentencing hearing. (*Id.* at PageID 585-86).

> The Ninth District overruled this assignment of error:

> {¶7} Mr. Gales' first assignment of error appears to argue that trial counsel was ineffective in connection with representing him at trial and by failing to advocate more strongly for a different sentence at his resentencing hearing. Mr. Gales raised ineffective assistance of counsel in his first appeal, and this Court overruled his assignment of error. To the extent that Mr. Gales raises issues related to trial again in this appeal, his arguments are barred by res judicata.

> {¶8} With respect to his arguments in connection with his resentencing, a defendant must demonstrate that counsel's performance was deficient in order to establish ineffective assistance of counsel. As explained above, the scope of Mr. Gales' resentencing was limited to the imposition of consecutive sentences, so counsel's decision not to advocate for a different sentence is not evidence of deficient performance. Mr. Gales' first assignment of error is, therefore, overruled.

(*Id.* at PageID 657-58 *see also State v. Gales,* 223 N.E.3d at 88).

Generally, as applied in Ohio, the doctrine of res judicata precludes a defendant from raising a claim that was previously litigated or that could have been litigated at trial or on direct appeal. *See State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967); *see also State v. Cole,* 443 N.E.2d 169, 171 (Ohio 1982). To this Court, Mr. Gales argues the Ninth District's conclusion that res judicata bars his claim about resentencing counsel's failure to review the prior trial proceedings, investigate for errors therein, and raise those errors to the trial court before resentencing is "contrary to clearly established federal law." (ECF #28 at PageID 809). Invoking a line of decisions from the Sixth Circuit, Mr. Gales contends:

> [W]hen a state court conducts a full and/or a limited resentencing hearing, and imposes a worse-than-before sentence, or a limited re-imposed sentence and there is a "material change" in that sentence, that sentence is a new judgment and the new judgment restarts the one-year statute of limitations for AEDPA purposes, allowing the defendant, or as here, the Petitioner, a new application to attack the sentence, the conviction, or both.

(*Id.* at 808, 810-11) (citing *Crangle v. Kelly,* 838 F.3d 673 (6th Cir. 2016); *Askew v. Bradshaw,* 636 F.App'x 342 (6th Cir. 2016); *King v. Morgan,* 807 F.3d 154 (6th Cir. 2015)).

These cases, however, do not stand for the proposition Mr. Gales advances—that res judicata would not bar challenges to all aspects of his original conviction and sentence because a state-court defendant is permitted to make those challenges on direct appeal of the judgment after resentencing. Those cases interpreted AEDPA, not Ohio law. In *Askew,* the Sixth Circuit determined that a resentencing to impose a term of post-release control creates a new judgment that allows a petitioner to file a *federal habeas petition* challenging both the underlying conviction and sentence without satisfying AEDPA's requirements for filing a second or successive petition. 636 F.App'x at 349. *King* addressed the same issue. *See* 807 F.3d at 159. Under *Crangle,* the Sixth Circuit determined that a state-court resentencing creates a new judgment that resets AEDPA's statute of limitations for filing a federal habeas petition. 838 F.3d at 675. Contrary to Mr. Gales' assertion, these cases do not identify or create a constitutional right, nor do they require any sort of procedure that must be followed in a state resentencing proceeding. *Williamson v. May,* No. 20-3084, 2020 U.S. App. LEXIS 21604 (6th Cir. 2020), *cert. denied,* 2020 WL 6037315, 141 S.Ct. 570 (Mem) (2020). And nothing in those cases suggests that obtaining a new judgment in the underlying criminal case eliminates the res judicata effects of the original judgment. *See Williams v. Warden, London Corr. Inst.,* No. 1:21-cv-423, 2023 WL 4237517, at *4 (S.D. Ohio June 28, 2023). Mr. Gales' argument that res judicata does not apply to his claims is unpersuasive.

In any event, the state court reasonably determined Mr. Gales had not shown ineffective assistance of counsel at the resentencing hearing. Under Ohio law, "[a] remand for a new sentencing hearing generally anticipates a de novo sentencing hearing," but there are

circumstances that may "apply to narrow the scope of a particular resentencing hearing." *State v. Wilson*, 951 N.E.2d 381, 385 (Ohio 2011). Interpreting the Supreme Court of Ohio's holding, Ohio courts have determined that when a trial court fails to make the requisite statutory findings to support imposing consecutive sentences and the appellate court remands on that basis, then "the trial court is limited on remand to only the question raised regarding the required findings pursuant to R.C. 2929.14(C)(4) to justify consecutive sentences." *State v. Nia*, 15 N.E.3d 892, 896 (Ohio Ct. App. 2014); *see also State v. Conn*, No. CA2015-07-061, 2016 WL 957895, at *2 (Ohio Ct. App. Mar. 14, 2016); *State v. Rock*, No. 2018-L-107, 2019 WL 2578448, at *2-3 (Ohio Ct. App. June 24, 2019). Thus, state law mandated that at the resenting hearing the trial court could not consider any additional trial-related errors if trial counsel attempted to raise them. Moreover, even if counsel asserted those errors at the resentencing hearing, the appellate court was in no position to consider them on appeal. *Wilson*, 951 N.E.2d at 387 ("The scope of an appeal from a new sentencing hearing is limited to issues that arise at the new sentencing hearing."). Similarly, Mr. Gales has not shown counsel was ineffective for not introducing evidence of his rehabilitation between sentencing hearings and not arguing for a reduced sentence at the resentencing hearing because, again, the trial court was limited to considering whether consecutive sentences are appropriate and to make the necessary findings. *See Nia*, 15 N.E.2d at 896. Because counsel cannot be deemed deficient for failing to take action that would have been futile, *see McQueen*, 99 F.3d 1328 (6th Cir. 1996), Mr. Gales has not shown state court's decision is an unreasonable determination under *Strickland*.

40

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Gales has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are meritorious federal constitutional claims or are procedurally defaulted. I thus recommend the District Court **DENY** Mr. Gales a COA for all grounds of his petition.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** Ground Seven as not cognizable, **DENY** Grounds One through Six and Ground Eight as meritless, and **DISMISS** the

petition. I further recommend the District Court **DENY** Mr. Gales a certificate of appealability on all grounds.

Dated: June 18, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).